## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **HNH WORKS, INC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:16-cv-86-WKW-PWG** |
| | ) | |
| **OHIO NATIONAL LIFE** | ) | |
| **ASSURANCE CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

On December 8, 2015, Plaintiff HNH Works, Inc. filed a civil complaint in the Circuit Court of Bullock, Alabama. (Doc. 1-1 at p. 3). Plaintiff, a corporation doing business in Bullock County, Alabama, sues: (1) Ohio National Life Assurance Corporation ("Ohio National"), a company incorporated in Ohio with its principal place of business in Ohio; and (2) Ohio National agent Lawrence A. Crisp, a citizen of Alabama. (Doc. 1-1 at pp. 3-4; Doc. 1 at p. 5). The state court complaint, sounding exclusively in state law, alleges claims against Ohio National and Crisp under the following five counts: breach of contract (Count 1); negligence and/or wantonness (Count II); bad faith (Count III); fraudulent suppression (Count IV); and fraudulent misrepresentation (Count V). (Doc. 1-1 at pp. 6-9).

On February 10, 2016, Ohio National removed the dispute to the United States District Court for the Middle District of Alabama, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Ohio National asserts that "Crisp's citizenship should be disregarded because he has been fraudulently joined" (Doc. 1 at p. 5).  On March 4, 2016, pursuant to Federal Rule of Civil Procedure 12(b)(6), Crisp filed a motion to dismiss on the basis that "HNH fails to state a claim against Agent Crisp upon which relief can be granted with respect to any of the five causes of action asserted." (Doc. 10 at p. 4).

On March 11, 2016, Plaintiff moved the court to remand this case to state court, contending that Crisp has not been fraudulently joined.  (Doc. 11 at p. 4).[1]  On March 17, 2016, the court ordered Ohio National and Crisp to file responses to the motion to remand by April 14, 2016.  (Doc.  15).  Each defendant has tendered a timely response.  (Docs. 27 and 28).

The matter is before the undersigned pursuant to the order of reference dated March 14, 2015.  (Doc. 12).  *See also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jefferey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).  The motion to remand is taken under submission

---

[1]  It is uncontested that the amount in controversy in connection with Plaintiff's civil action exceeds $75,000.00.

2

on the record and without oral argument.  For the reasons discussed below, the motion to remand (Doc. 11) is due to be granted and this cause remanded to the Circuit Court of Bullock County, Alabama.

## I.   BACKGROUND

### A.   Plaintiff's Complaint and the Notice of Removal

Sometime in 2014, Plaintiff's representatives met with Crisp to discuss purchasing insurance from Ohio National to protect it in the event certain key employees of Plaintiff were killed or died.  (Doc. 1-1 at ¶ 12).  As part of the process in purchasing this "key man" insurance, Crisp met with and interviewed Plaintiff's key employee Spencer Coleman, Jr.  (Doc. 1-1 at ¶ 13).  Crisp asked Coleman certain health questions during the interview, and Coleman answered them "honestly and to the best of his ability."  (Doc. 1-1 at ¶ 14).  Crisp further "aided . . . Coleman in completing the insurance application and additional paperwork and never told . . . Coleman that he did not qualify for the insurance policy issued."  (Doc. 1-1 at ¶ 15).

Ohio National issued a $1 million life insurance policy (Policy number 7079925), insuring Coleman's life with Plaintiff named as the beneficiary.  (Doc. 1-1 at ¶¶ 13, 16).  In selling the policy, Crisp "represented that [Ohio National] would pay a claim according to the policy."  (Doc. 1-1 at ¶ 17).  Because Coleman's medical

history and risks were disclosed, he "was rated at a higher risk and paid a higher premium due to those risks." (Doc. 1-1 at ¶ 22).

On or about January 12, 2015, Coleman died as a result of injuries sustained in an automobile accident. (Doc. 1-1 at ¶ 18). Plaintiff timely filed a claim for benefits under the policy with Ohio National. (Doc. 1-1 at ¶ 19). On May 12, 2015, Ohio National "denied Plaintiff's claim for benefits claiming that after their investigation and review of the policy they determined that . . . Coleman did not 'fully and accurately' disclose his medical history." (Doc. 1-1 at ¶ 21). Ohio National issued to Plaintiff a check for the premiums paid on the policy and attempted to rescind the policy. (Doc. 1-1 at ¶ 23). Plaintiff did not accept the check. (Doc. 1-1 at ¶ 23).

Plaintiff contends that it "has been denied benefits under the policy that it is rightfully due." (Doc. 1-1 at ¶ 25). In seeking compensatory and punitive damages, Plaintiff asserts claims of breach of contract (Count 1), negligence and/or wantonness (Count II), bad faith (Count III), fraudulent suppression (Count IV), and fraudulent misrepresentation (Count V). (Doc. 1-1 at ¶¶ 26-56).

In the notice of removal, Ohio National asserts that Plaintiff fraudulently joined Crisp in this action on the basis "there is no possibility that Plaintiff can establish a cause of action against Crisp." (Doc. 1 at p. 6). Because Crisp was not a party to the

insurance contract, Ohio National contends that Plaintiff's breach of contract and bad faith claims fail as a matter of law.  (Doc. 1 at pp. 6-7).  Ohio National further contends that Plaintiff has failed to set forth allegations stating a plausible claim of either negligence and/or wantonness, fraudulent suppression, or fraudulent misrepresentation.  (Doc. 1 at pp. 7-12).

### B.    Plaintiff's Motion to Remand

Plaintiff concedes in its motion to remand that it has no breach of contract or bad faith claim against Crisp.  (Doc. 11 at p. 9).  Based on Alabama's notice pleading standard, Plaintiff contends that it has presented allegations in sufficient detail to state claims of negligence and/or wantonness, fraudulent suppression, or fraudulent misrepresentation.  (Doc. 11 at p. 10-15).  Plaintiff contends, therefore, that Ohio National cannot satisfy its heavy burden to establish removal and that Plaintiff's showing of the possibility of valid causes of action is sufficient to defeat a fraudulent joinder claim.  (Doc. 11 at pp. 7-8).

Ohio National responds that HNH's claim for benefits under the "key man" insurance policy was denied because Coleman failed to disclose pertinent information about his health and medical history during the application process for insurance coverage.  (Doc. 27 at pp. 6-8).  In its investigation following the filing of Plaintiff's claim seeking insurance benefits, Ohio National discovered that many of the answers

5

provided by Plaintiff on his application and drug questionnaires were incorrect or materially false.  (Doc. 27 at p. 10).  Thus, Ohio National maintains that "there is no reasonable possibility that Crisp could be liable under any of the three remaining causes of action."  (Doc. 27 at p. 3).

In his response to the motion to remand, Crisp incorporates the arguments advanced in his motion to dismiss to explain why there is no possibility Plaintiff can state a cause of action against him.  (Doc. 28 at p. 2).  Similar to those arguments raised by Ohio National, Crisp contends that Plaintiff has failed to present any viable claims for negligence and/or wantonness, fraudulent suppression, or fraudulent misrepresentation.  (Doc. 10 at 9-15).

## II.   DISCUSSION

### A.    Diversity Jurisdiction and Fraudulent Joinder

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *accord City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012).  A federal court may exercise diversity jurisdiction over all civil

actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). A removing defendants' burden to establish federal jurisdiction is "a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause

of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* The defendant must make such a showing by *clear and convincing evidence. See Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (emphasis added).

In the context of fraudulent joinder, the court is required to both evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "However, if a defendant shows that there is no possibility the plaintiff can establish [any of the alleged] cause[s] of action against the resident defendant, then the plaintiff is said to have fraudulently joined the non-diverse defendant." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quotation marks and citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "In that situation the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence*, 484 F.3d at 1297.

Although the determination of whether a non-diverse defendant has been fraudulently joined "should be made based upon the plaintiff's pleadings at the time

8

of removal," *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)), a district court "can consider any submitted affidavits and/or deposition transcripts," *id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts." (citing, in turn, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A Dec. 1981))), *superseded by statute on other grounds as stated in Georgetown Manor*, *Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993)).   Courts may also consider evidence other than affidavits or depositions, as long as the evidence is properly authenticated.   *See Ferguson v. Tennessee American Recycling, LLC*, No. 2:11-549-KD-C, 2011 WL 6670191, at *4 n.3 (S.D. Ala. Dec. 2, 2011) (citing *Cabalceta*, 883 F.2d at 1561).   *See also Fowler v. Safeco Ins. Co. v. America*, 915 F.2d 616, 617 (11th 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal").

Appended to the notice of removal is an affidavit from Rosemary Gatto, the Vice President of Claims for Ohio National.  (Doc. 1-2).  Gatto states in her affidavit that: (1) due to "inconsistencies between his lab results and the answers in his December 15, 2013 Drug Questionnaire, [Coleman] was required to submit a second Drug Questionnaire, which was dated December 18, 2013"; (2) "Ohio National would not have issued the Policy if [Coleman] had fully and accurately disclosed his medical

history in response to the questions on the application and questionnaires"; and (3) Crisp played no role in the decision to rescind the policy with respect to the claim on Coleman's death.  (Doc. 1-2 at pp. 2-3).

Attached to Gatto's affidavit are numerous exhibits detailing Plaintiff's "key man" insurance policy with Ohio National, Coleman's application, and the denial of benefits following Coleman's death.  (Doc. 1-2 at pp. 3-4).  The attached exhibits consist of:

(1)  the "key man" policy, effective December 28, 2013, insuring Coleman's life as one of Plaintiff's key employees as well as a completed insurance application (Doc. 1-3 at pp. 3-32);

(2)  Coleman's completed paramed life insurance application, dated November 11, 2013, which lists Plaintiff as the beneficiary and includes information pertaining to Coleman's medical history (Doc. 1-4 at pp. 1-7);

(3)  Coleman's completed Drug Questionnaire dated December 15, 2013 (Doc. 1-5 at p. 2);

(4)  Coleman's second completed Drug Questionnaire dated December 18, 2013 (Doc. 1-6 at p. 2);

(5)  Ohio National's letter, dated May 12, 2015, denying benefits to Plaintiff under the policy (Doc. 1-7 at pp. 1-7); and

(6)    Ohio National's letter, dated July 29, 2015, summarizing the reasons for the denial of Plaintiff's claim (Doc. 27-2 at pp. 3-5).[2]

## II.    DISCUSSION

### A.    Proper Pleading Standard

The federal pleading standards require that the factual allegations in a plaintiff's complaint be sufficient to state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). With respect to Plaintiff's claims in Counts II, IV, and V of the complaint, Ohio National asserts that Plaintiff has neither stated a claim for relief against Crisp under Alabama law nor "set forth allegations sufficient to state such a claim that is 'plausible on its face' under the federal standard." (Doc. 1 at pp. 7-10). Without specifying whether the court should use Alabama or federal pleading standards, Crisp contends in his motion to dismiss that Plaintiff has failed to present any viable claims for negligence and/or wantonness, fraudulent suppression, or fraudulent misrepresentation. (Doc. 10 at 9-15).

Plaintiff maintains that Alabama's "notice" pleading standard is the proper standard to apply when considering whether Plaintiff has stated valid state law claims

---

[2]  Ohio National originally attached a redacted copy of the letter dated July 29, 2015, as Exhibit B-6 to the notice of removal. (Doc. 1-8). The court subsequently granted Ohio National's motion to file under seal an unredacted copy of Exhibit B-6. (Doc. 16). Thus, on April 7, 2016, Ohio National filed under seal an unredacted copy of the July 29, 2015 letter. (Doc. 27-2)

against Crisp.  (Doc. 11 at p. 9).  Plaintiff's understanding of the proper pleading standard to apply in the context of fraudulent joinder is correct.  When considering a fraudulent joinder claim, federal courts are instructed to use the state rather than federal pleading standards.  *Stillwell v. Allstate Ins. Co.,* 663 F.3d 1329,1334 (11th Cir. 2011) ("We must necessarily look to the pleading standard applicable in state court, not the plausibility standard prevailing in federal court." ).  The Eleventh Circuit also observed that "[the] plausibility standard [of *Iqbal* and *Twombly*] 'asks for more than a sheer possibility that a defendant has acted unlawfully'. . . .  In contrast, all that is required to defeat a fraudulent joinder claim is 'a possibility of stating a valid cause of action.'"  *Stillwell*, 633 F.3d at 1333 (quoting *Triggs*, 154 F.3d at 1287).

> The standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient: "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." [] "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."

*Ullah v. BAC Home Loan Servicing, LP*, 538 Fed. Appx. 844, 846 (11th Cir. 2013) (citation omitted).[3]

---

[3] *Ullah* appears in the Federal Appendix and is therefore "unpublished."  When cited, it is not binding "'...but [] may be [] persuasive authority.'  *See* 11th Cir. R. 36-2; *United States v.*

Alabama employs a notice pleading standard, which notably does not incorporate *Iqbal* or *Twombly* pleading standards.  *See Thomas v. Williams*, 21 So. 3d 1234, 1236 n. 1 (Ala. Civ. App. 2008) (refusing to apply *Twombly* to state court pleading standards).  Notice pleading must "provide defendants adequate notice of the claims against them." *Ex parte International Ref. & Mfg. Co.*, 972 So. 2d 784, 789 (Ala. 2007); *see also Ala. R. Civ. P. 8*, *Committee Comments* ("the prime purpose of pleadings is to give notice.").

The standard for notice pleading is considered met "if the claim for relief gives to the opponent fair notice of the pleader's claim and the grounds upon which it rests. The discovery process bears the burden of filling in the factual details." *McKelvin v. Smith*, 85 So.3d 386, 389 (Ala. Civ. App. 2010) (internal citations omitted).  While federal pleading standards under *Iqbal* may require "sufficient factual matter . . . [for] facial plausibility," an Alabama complaint cannot be dismissed "if the pleading contains even a generalized statement of facts which will support a claim for relief." *McKelvin*, 85 So.3d at 389 (quoting *Simpson v. Jones*, 460 So.2d 1282, 1285 (Ala. 1984)).  The adequacy of pleading in an Alabama court is a state, not federal, matter in the first instance.  *Henderson*, 454 F.3d at 1284 ("[T]he decision as to the

---

*Rodriguez-Lopez*, 363 F.3d 1134, 1136 n.4 (11th Cir. 2004)." *Suntree Technologies, Inc. v. Ecosense International, Inc.*, 693 F.3d 1338, 1349 n.1 (11th Cir. 2012).

sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands.").

### B.  Analysis of Plaintiff's claims

#### 1.  Negligence and/or Wantonness

In Count II of the complaint, Plaintiff alleges that: (1) Crisp, along with Ohio National, negligently and/or wantonly failed to institute proper procedures, controls and failed to exercise that level of care and diligence that would have prevented the Plaintiff from being damaged"; and (2) Crisp "negligently and/or wantonly failed to request the information necessary to insure that the policy issued to the Plaintiff insuring Mr. Coleman's life would be issued and would pay benefits." (Doc. 1-1 at ¶¶ 32-33).  Plaintiff further alleges that it has been damaged "[a]s a direct and proximate result of the negligence and/or wantonness of" Crisp.  (Doc. 1-1 at ¶ 34).

"Under Alabama law, there are four elements to establish a case of negligence or wantonness: (1) duty, (2) breach of duty; (3) proximate cause, and (4) injury." *Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1106 (M.D. Ala. 2005) (citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 104 (Ala. 2003)).  "A wantonness cause of action imposes similar requirements to a negligence

claim, but with the enhanced culpability requirement that the conduct be done recklessly or in conscious disregard of others' rights." *Raley v. Bank of America, N.A.*, No. 2:14-CV-857-WMA, 2014 WL 6684906, at *4 (N.D. Ala. Nov. 25, 2014) (citing *Edmonson*, 374 F. Supp.2d at 1106).

"'Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage.'" *Culbertson v. Barr*, No. 06-0722-CB-B, 2008 WL 243671, at *2 (S.D. Ala. Jan. 28, 2008) (quoting *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978)). Insurance agents who negligently or unjustifiably fail to exercise such reasonable care become liable for any resulting damages. *Highland Underwriters*, 361 So. 2d at 1065. Insurance agents, however, have "no obligation to independently investigate" statements provided by an insurance applicant. *See Crowne Investments, Inc. V. Bryant*, 638 So. 2d 873, 878 (Ala. 1994).

Ohio National has attached to its notice of removal Plaintiff's "key man" insurance policy as well as the insurance application completed by Coleman. (Doc. 1-3). By signing the application, Coleman agreed that his statements and answers were true and complete to the best of his knowledge and belief. (Doc. 1-3 at p. 30). The "key man" policy contains an "Incontestability" provision, which provides:

> We will not contest this policy due to a false statement, material to the risk, which was made in your application for an amount of insurance if: (a) the Insured lives more than two years after the Policy Date; and (b) the policy is in force at the time of the Insured's death.

(Doc. 1-3 at p. 17). Plaintiff died on January 12, 2015, however, within two years of the policy's effective date, December 28, 2013. (Doc. 1-1 at p. 18).

Crisp and Ohio National each contend that Plaintiff's complaint does not identify the information that Crisp allegedly failed to request. (Doc. 10 at p. 10; Doc. 27 at p. 17). Ohio National has offered evidence showing that Coleman had provided answers on the "key man" insurance applications and drug questionnaires indicating that he: (1) never suffered from a hernia, ulcers, hepatitis, or any disorder of the stomach, liver, gallbladder, spleen, pancreas, intestines, or rectum; (2) never been treated as advised to be treated for alcohol or drug abuse; and (3) denied the use of drugs with the exception of using marijuana or hashish. (Doc. 1-3 at pp. 29, 31; Doc. 1-4 at p. 6; Doc. 1-5 at p. 2; Doc. 1-6 at p. 1).

Additional evidence presented by Ohio National reveals that, after Plaintiff filed its claim under the "key man" policy as to Coleman's death, Ohio National investigated Coleman's medical history and discovered Coleman had furnished false or incorrect information pertaining to this medical history. The evidence submitted includes information that Coleman had previously been diagnosed with Hepatitis C;

and had a history of drug and alcohol abuse.  (Doc. 24-1 at pp. 2-4).  Ohio National contends that Plaintiff has no reasonable possibility of establishing a cause of action against Crisp under negligence or wantonness because: (1) Plaintiff's claim was denied for the sole reason that Coleman had failed to disclose vital information about his health; and (2) Crisp had no duty to verify the information provided by Coleman in his insurance application and drug questionnaires.  (Doc. 27 at p. 17).

The evidence presented by Ohio National indicates that Coleman was not entirely truthful with respect to disclosing his medical history and health risks in connection with the application process for "key man" insurance.  According to Plaintiff, however, Crisp failed to exercise appropriate reasonable care with regard to the procurement of the "key man" insurance" by not obtaining necessary information from Coleman.  (Doc. 11 at p. 11).

Plaintiff's generalized statements of fact in its complaint provide Ohio National and Crisp with sufficient notice of Plaintiff's negligence and/or wantonness claim.  Plaintiff's allegations state that Crisp assisted Coleman in the preparation of the "key man" insurance application by interviewing Coleman and providing drug questionnaires for Coleman to complete.  (Doc. 1-1 at ¶ 14-15).  According to Plaintiff, Coleman fully disclosed his medical history while answering any health questions honestly and to the best of his ability.  (Doc. 1-1 at ¶ 14).  Plaintiff further

states that he received notice from Crisp that additional paperwork and drug questionnaires were necessary to complete. (Doc. 11 at pp 10-11). Despite the fact Coleman complied and provided additional information to Crisp, Ohio National nevertheless denied benefits to Plaintiff. (Doc. 1-1 at ¶¶ 20-22).

In light of Ohio National's decision to deny Plaintiff coverage following Coleman's death, Plaintiff's allegations suggest that Crisp may not have utilized reasonable skill, care, and diligence in effecting coverage under the "key man" policy. Ohio National, therefore, has failed to satisfy its heavy burden and prove by clear and convincing evidence that there is no possibility an Alabama court could find Plaintiff's allegations sufficient to state a negligence and/or wantonness claim. While Plaintiff's allegations may ultimately prove to be insufficient, such decision should be left to the appropriate Alabama court. *See Henderson*, 454 F.3d at 1284. Accordingly, Ohio National cannot establish that Crisp was fraudulently joined.

## 2.    **Fraudulent Suppression**

Plaintiff alleges in Count IV that Crisp: (1) suppressed from Coleman and Plaintiff that the information provided to Ohio National was either incomplete or inaccurate; and (2) failed to inform Coleman and Plaintiff that additional information was needed in order to underwrite the policy properly. (Doc. 1-1 at ¶¶ 46-47). Plaintiff further alleges that correct information would have been provided by

Coleman and Plaintiff had Crisp informed them of the need for additional information.  (Doc. 1-1 at ¶ 48).  Plaintiff claims that it was injured and damaged as a result of Crisp's fraudulent suppression.  (Doc. 1-1 at ¶ 49).

"In order to establish [its] claim of fraudulent suppression, [Plaintiff was] required to prove 1) that [Crisp] had a duty to disclose material facts; 2) that [Crisp] concealed or failed to disclose those facts; 3) that the concealment or failure to disclose those facts induced [Plaintiff] to act or refrain from acting; and 4) that [Plaintiff] suffered actual damage as a proximate result."  *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 11 (Ala. 2002).  "'[A]n action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed.'"  *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) (quoting *McGarry v. Flounoy*, 624 So. 2d 1359, 1362 (Ala. 1993)).

Furthermore, the Alabama Supreme Court has held that:

A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact.  A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case.

*Keck*, 830 So. 2d at 11.  Factors relevant to determining "whether the alleged circumstances create a duty of disclosure include, (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the

plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1278 (N.D. Ala. 2012) (citations and internal quotations omitted).   "This analysis is made on a 'case-by-case basis' and is flexibly applied." *Id.*

Similar to the Federal Rules of Civil Procedure, Alabama requires that claims sounding in fraud must be pleaded with particularity.   Ala. R. Civ. P. 9(b).   The Committee Comments on the 1973 Adoption of Rule 9 explain:

> [T]his special requirement [in Rule 9(b)] as to fraud . . . does not require every element in such actions to be stated with particularity.   It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of.   The pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. . . . But knowledge of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. . . . [I]t should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint if the pleading gives fair notice to the opposing party[.]

*See DGB, LLC v. Hinds*, 55 So. 3d 218, 230 (Ala. 2010).   The purpose of the particularity requirement in Rule 9(b) "is to give fair notice to the opposing party." *Winn-Dixie Montgomery, Inc. v. Henderson*, 371 So. 2d 899, 901 (Ala. 1979).

Crisp and Ohio National assert that Plaintiff has failed to set out sufficient allegations of fraudulent suppression against Crisp.   (Doc. 10 at p. 12; Doc. 27 at p 13).   Each defendant contends that Plaintiff's complaint neither states what facts were

suppressed, why such facts were material, nor why Crisp owed a duty to disclose such unspecified facts in the first place. (Doc. 10 at p. 12; Doc. 27 at pp. 13-14). They further argue that the insurance application provided to Plaintiff and its key employees disclosed all the information necessary to obtain the policy and that no further information was needed to underwrite the "key man" policy. (Doc. 10 at p. 13; Doc. 27 at p. 14).

Plaintiff contends that it set out sufficient allegations in support of its fraudulent suppression claim, stating that Crisp suppressed important information about what Ohio National viewed as inaccurate or incomplete information provided by Coleman on the insurance application form and drug questionnaire. (Doc. 11 at pp. 13-14). Plaintiff's allegations, however, only reference the information suppressed by Crisp in a generalized or conclusory fashion and, therefore, fail to state fraud with sufficient particularity under Rule 9(b). Indeed, without detailing the contents of the suppressed information, it would be impossible for Plaintiff to show whether Crisp owed Plaintiff a duty of disclosure based on the particular circumstances of this case. *See State Farm Fire and Casualty Co. v. Owen*, 729 So. 2d 834, 842-43 (Ala. 1996) (recognizing that State Farm owed no duty of disclosure to the insured based on the special circumstances of the case where the insurance application's language was clear).

Nevertheless, "inadequacies in pleading are generally handled by allowing plaintiff an opportunity to amend the complaint to correct them, but even where dismissal might be a proper remedy in federal court, a failure to correctly plead a claim does not require a finding that a plaintiff fraudulently joined a particular defendant or that there is no possibility that plaintiff could have established a cause of action against these defendants had the action remained in state court." *Hampton v. Georgia-Pacific, LLC*, No. 11-0363-KD-N, 2011 WL 5037403, at *5 (S.D. Ala. Oct. 24, 2011). If given the opportunity, Plaintiff may be able to amend his complaint to present allegations of fraudulent suppression with sufficient particularity under Rule 9(a).

While lacking the requisite particularity, Plaintiff's allegations suggest the possibility that Crisp may have withheld important information from Plaintiff that would have resulted in a properly underwritten policy and provided benefits to Plaintiff upon Coleman's death. Ohio National has failed to satisfy its heavy burden and prove by clear and convincing evidence that there is no possibility an Alabama court could find Plaintiff's allegations sufficient to state fraudulent suppression claim. Any decision as to whether Plaintiff's allegations are sufficient should be left to the appropriate Alabama court. *See Henderson*, 454 F.3d at 1284). Accordingly, Ohio National cannot establish that Crisp was fraudulently joined.

22

### 3.   Fraudulent Misrepresentation

Plaintiff alleges in Count V that Crisp: (1) misrepresented to Plaintiff that a valid "key man" policy was in effect with respect to all of the employees for whom coverage was purchased, including Coleman; and (2) misrepresented to Plaintiff that the coverage issued "would provide necessary benefits to the Plaintiff in the event that one of its key employees died." (Doc. 1-1 at ¶¶ 52-53). Plaintiff further alleges that it relied on these representations "in purchasing the policies, making premium payments, and failing to obtain alternative insurance coverage on [its] key employees." (Doc. 1-1 at ¶ 54). Plaintiff claims that it was injured and damaged as a result of Crisp's fraudulent representations. (Doc. 1-1 at ¶ 44).

In Alabama, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101. To succeed on a claim of fraudulent misrepresentation, a plaintiff must show: "'(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result.'" *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So. 2d 928, 935 (Ala. 1992)).

Ohio National and Crisp contend that Crisp provided true and accurate statements that a valid "key man" insurance policy was issued which would provide necessary benefits to Plaintiff should a key employee like Coleman die. (Doc. 10 at p. 14; Doc. 27 at p. 16). Ohio National cites *Levett v. Independent Life and Accident Ins. Co.*, 814 F. Supp. 1053 (M.D. Ala. 1993) in support of its argument. (Doc. 27 at p. 16). In *Levett*, the plaintiff claimed that the insurance agent made representations to her and her son that "the benefits thereof were payable, and would be paid, to the beneficiary upon the death of [her son] unless [her son] was intentionally killed by someone." *Id.* at 1055 (internal quotations and citation omitted). After the plaintiff's son was killed by an individual, the defendant "denied coverage based on the exclusion in the coverage which precluded recovery if the insured was intentionally killed or injured by someone else." *Id.*

While seeking to amend the complaint in order to name the insurance agent, the plaintiff moved for remand as the court would no longer have diversity jurisdiction. *Id.* The court granted the motion to amend. *Id.* at 1056. The plaintiff's amended complaint claimed, in part, that the insurance agent had made fraudulent misrepresentations at the time the policy was negotiated. *Id*. In denying the plaintiff's motion to remand, the court determined there was no possible action in state court for fraudulent misrepresentation. *Id.* at 1056-57. Assuming that the

insurance agent made any representations to the plaintiff, the court concluded that such "representations were true facts supported by the language in the policy and consistent with the defendant's independent reason for denying the clam." *Id.* at 1057. The *Levett* court explained that "[a]bsent a false statement there can be no reliance, justifiable or otherwise, that gives rise to this action." *Id.*

Plaintiff maintains that "Defendants misrepresented to [Plaintiff] that key man policies were in effect on its key employees and that coverage under the policy would pay benefits if a key employee died." (Doc. 11 at p. 14). Plaintiff, however, identifies no false representation made by Crisp in connection with his participation in interviews of key employees and discussion of coverage with Ohio National. Similar to the scenario presented in *Levett*, the representations made by Crisp that are referenced in the complaint were true statements at the time they were made and were supported by the language in the "key man" insurance policy.

Because Plaintiff's complaint fails to state any allegations of a false representation made by Crisp, he has failed to state an actionable claim of fraudulent misrepresentation against Crisp. *See Fisher*, 772 So. 2d at 463; *Levett*, 814 F. Supp. at 1057. Nevertheless, even assuming that no amendment could cure the deficiency and there exists no possibility an Alabama court would entertain Plaintiff's fraudulent

misrepresentation claim, Ohio National cannot establish that Crisp was fraudulently joined for the reasons discussed above.

### III.   CONCLUSION AND RECOMMENDATION

Accordingly, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion to remand (Doc. 11) is due to be **GRANTED**, and this case is due to be **REMANDED** to the Circuit Court of Bullock, County, Alabama, for lack of subject matter jurisdiction at the time of removal.  Because this court lacks subject matter jurisdiction, the court should decline to enter any ruling on Defendant Crisp's motion to dismiss (Doc. 10), and that motion should remain pending for adjudication by the state court.

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **May 12, 2016.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from

attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

      **DONE** and **ORDERED** this 28th day of April, 2016.

          /s/ Paul W. Greene
          United States Magistrate Judge